IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| CHRISTOPHER GUILLEN,<br>    *Plaintiff*,<br><br>v.<br><br>DAVID R. BASSE, *et al.*,<br>    *Defendants*. | §<br>§<br>§<br>§    No. PE:23-CV-00007-DC-DF<br>§<br>§<br>§ |

**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Defendant Ben Raimer's ("Raimer") and Defendants David Basse ("Basse"); Gerald Baluti ("Baluti"); Lannette Linthicum ("Linthicum"); Tedd Mitchell ("Mitchell"); and Owen Murray's ("Murray") (collectively with Raimer, "Defendants") Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (both motions collectively, "Motions to Dismiss").[1] (Docs. 11, 12). This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the undersigned **RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED**. (Docs. 11, 12).

**I. BACKGROUND**

Plaintiff Christopher Guillen ("Plaintiff") is an individual who, at all times relevant to this lawsuit, was incarcerated with the Texas Department of Criminal Justice ("TDCJ"). On October 21, 2019, Plaintiff filed suit against several defendants ("Eastern Defendants"), including the instant

---

1. Both Raimer's as well as the other Defendants' Motions to Dismiss offer substantively identical arguments. Additionally, the following analysis applies equally in major part to each Motion to Dismiss as well as to each Defendant except where noted. For the purposes of brevity, the undersigned will refer to the motions collectively as "Motions to Dismiss" unless otherwise appropriate.

Defendants, in the District Court for the Eastern District of Texas.[2] On January 20, 2023, citing the "factual scenarios which occurred at two different prison facilities," involving incidents which were "separate and distinct from each other," the Eastern District of Texas severed Defendants and the claims presented against them.[3] The original lawsuit proceeded thereafter against the Eastern Defendants in that court and eventually was dismissed with prejudice as to all federal claims against all Eastern Defendants. The court also declined to exercise supplemental jurisdiction over any of Plaintiff's state law claims.[4]

As relevant to this action, Plaintiff alleges that on May 11, 2019, he was transported to a prison infirmary at the Gib Lewis facility after suffering an injury in the prison kitchen. Plaintiff asserts that he was thereafter transported to a hospital in Tyler County, Texas. In the emergency room, Plaintiff was evaluated and instructed to take ibuprofen, atenolol, and terazosin for a period of thirty days. He allegedly had no visible injuries but had pains in his shoulders and back. Plaintiff had x-rays performed the same day which revealed no signs of injury. Before his discharge, a nurse scheduled an MRI to discover the cause of his back pain and swollen collar bones.[5]

Plaintiff was later transferred to the Fort Stockton facility, where he was seen by Defendants Basse and Baluti for his pain. Plaintiff received additional x-rays, which again showed no signs of injury. Basse and Baluti allegedly informed Plaintiff that he would be scheduled for an MRI on or around October 6, 2020. Plaintiff was informed on November 3, 2020, that the MRI request was denied.[6]

Plaintiff maintains the following causes of action against Defendants: (1) negligence and negligent hiring; and (2) deliberate indifference to his serious medical needs under the Eighth

---

2. *Christopher Guillen v. Lorie Davis et al.*, No. 9:19-cv-00187-MAC-ZJH (E.D. Tex. Oct. 21, 2019) (ECF No. 1).
3. *Id.* (Jan. 20, 2023) (ECF No. 63 at 1).
4. *Id.* (Mar. 1, 2023) (ECF No. 66 at 2).
5. (Doc. 2 at 8, 9, 10).
6. (*Id.* at 10, 11).

Amendment to the United States Constitution.[7] For these, Plaintiff seeks the cost of suit plus actual, punitive, and declaratory damages in the amount of $2,700,000.00.

Defendants filed their Motions to Dismiss on April 20, 2023, and May 11, 2023. Plaintiff has not filed a response to either motion. Accordingly, this matter is now ripe for disposition.

## II. LEGAL STANDARD

### A.   Federal Rule 12(b)(1)

Federal courts are courts of limited jurisdiction.[8] The courts possess only the power authorized by the Constitution and federal statutes.[9] Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the trial court's subject matter jurisdiction to hear a case.[10]

Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[11] "[A]ll uncontroverted allegations in the complaint must be accepted as true."[12] "Thus, unlike a motion to dismiss under [Federal] Rule 12(b)(6), when examining a motion to dismiss for lack of subject matter jurisdiction under [Federal] Rule 12(b)(1), the district court is entitled to consider disputed facts as well as undisputed facts in the record."[13]

---

7. Plaintiff appears to also allege a claim for "failure to treat" his injuries. (Doc. 2 at 11). This contention is more appropriately addressed as part of Plaintiff's state law claim for negligence, considered below. To the extent it presents an Eighth Amendment claim, it is considered in the below analysis of such claim accordingly.
8. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
9. *Id.* (citations omitted).
10. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
11. *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).
12. *Taylor v. Dam*, 244 F. Supp. 2d 747, 752 (S.D. Tex. 2003) (citations omitted).
13. *Id.* (citations omitted).

The burden of proof for a Federal Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.[14] Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."[15]

**B.    Federal Rule 12(b)(6)**

When a defendant files a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the trial court must assess whether a complaint states a plausible claim for relief.[16] The court must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff."[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

On the other hand, if the complaint only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is appropriate.[19] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[20] The court should dismiss a complaint if the court can only infer the mere possibility of misconduct, or if the plaintiff has only alleged that he is entitled to relief rather than stating a claim that is "plausible on its face."[21]

### III. DISCUSSION

Defendants contend that sovereign and qualified immunity preclude Plaintiff's claims. In the event that immunity does not apply, Defendants maintain that Plaintiff has failed to state a claim upon which relief can be granted. While Plaintiff does not expressly reference § 1983 as the statute

---

14. *Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)); *Taylor*, 244 F. Supp. 2d at 752.
15. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).
16. *See Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)).
17. *See id.*
18. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
19. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
20. *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).
21. *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 570).

under which he is seeking relief, "[d]eliberate indifference is an Eighth Amendment standard and thus falls under 42 U.S.C. § 1983."[22] Therefore, the undersigned will construe Plaintiff's claims as being presented under § 1983.

Because Defendants present Eleventh Amendment arguments which would potentially deprive this Court of subject matter jurisdiction, the undersigned turns to it first.

**A.     Eleventh Amendment Immunity**

Defendants maintain that sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution shields them from monetary liability.[23]

The Eleventh Amendment is a jurisdictional bar that precludes liability from suits "in which the State or one of its agencies or departments is named as the defendant."[24] Buttressing the doctrine of sovereign immunity, the Eleventh Amendment insulates States and their agencies from liability except where it consents or Congress provides for such suit.[25] Section 1983 allows for recovery against "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."[26] Neither States themselves, nor their agents or agencies, are "persons" under § 1983, and Congress has not otherwise abrogated their immunity under that statute.[27] Thus, a plaintiff cannot seek monetary damages against Texas or its agencies absent its consent.[28]

---

22. *See Back v. Tex. Dep't of Crim. Just.-Corr. Insts. Div.* 2017 WL 1174504, at *8 (E.D. Tex. Jan. 24, 2017).
23. (Docs. 11 at 3; 12 at 3–5).
24. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)
25. U.S. Const. amend. XI; *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011) (finding non-consenting state university to be a "state agency" immune from § 1983).
26. 42 U.S.C. § 1983.
27. *Hart v. Univ. of Tex.*, 474 F. Supp. 465, 467 (S.D. Tex. 1979); *Avena v. Tex. Dep't of Hum. Servs.*, No. SA-05-CA-653-XR, 2006 WL 2734325, at *8 (W.D. Tex. Sept. 22, 2006); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[W]e reaffirm [] what we had concluded prior . . . that a State is not a person within the meaning of § 1983.").
28. *See Simpson v. Salsbery*, 565 F. Supp. 3d 883, 890 (S.D. Tex. Sept. 30, 2021).

In this case, Plaintiff brings suit against alleged Texas Department of Criminal Justice ("TDCJ") doctors (Murray, Basse, and Baluti); a physician at the University of Texas Medical Branch ("UTMB") (Raimer); the director of the TDCJ Health Services Division (Linthicum); and the president of the Texas Tech University Health Sciences Center ("TTUHSC") (Mitchell). Texas state organizations, entities, and their employees acting in their official capacities have sovereign immunity from claims brought pursuant to § 1983. Specifically, the Fifth Circuit has squarely found that the TDCJ, UTMB, and TTUHSC are agencies of Texas and therefore possess sovereign immunity.[29] Defendants are undisputedly employees of those three organizations. Therefore, all Defendants will enjoy sovereign immunity from suit in their official capacities unless they have consented.

Plaintiff bears the burden of demonstrating that Defendants have waived sovereign immunity.[30] Plaintiff does not claim that they have and provides no authority signifying such. The undersigned finds that Plaintiff has not met his burden of demonstrating this Court possesses subject matter jurisdiction over these Defendants. His § 1983 claim must therefore be dismissed for want of subject matter jurisdiction under Federal Rule 12(b)(1). Accordingly, the undersigned **RECOMMENDS** that the Motions to Dismiss be **GRANTED** as to Plaintiff's § 1983 claim against Defendants in their official capacity.

B.   **Federal Rule 12(b)(6) Claims**

Should any of Plaintiff's claims skirt sovereign immunity, and to the extent Plaintiff asserts claims against Defendants in their individual capacity, the undersigned would still recommend their dismissal nevertheless. To state a claim under § 1983, a plaintiff must first show a violation of the

---

29. *See Harris v. Angelina County*, 31 F.3d 331, 337 (5th Cir. 1994) (TDCJ immune); *Lewis*, 665 F.3d at 630 (UTMB immune); *United States ex rel. Foulds v. Tex. Tech Univ.*, 171 F.3d 279, 289 (5th Cir. 1999) (TTUHSC immune).
30. *Ramming*, 281 F.3d at 161.

Constitution or of federal law, and then show that the violation was committed by someone acting under color of law.[31]

### 1. Eighth Amendment

Plaintiff argues that Defendants Basse and Baluti violated his Eighth Amendment rights. Specifically, Plaintiff alleges that Basse and Baluti were deliberately indifferent when they (1) refused him treatment and (2) ignored his complaints, which constituted a "wanton disregard" of his "serious medical needs."[32]

Under the Eighth Amendment, States are unable to inflict "cruel and unusual punishments."[33] Prison officials inflict cruel and unusual punishment if they are deliberately indifferent to an inmate's serious medical needs.[34] A prison official acts with deliberate indifference "only if he knows that [an] inmate[] face[s] a substantial risk of serious harm [to his future health] and disregards that risk by failing to take reasonable measures to abate it."[35] In other words, "at a minimum, the plaintiff must show that prison officials acted with a conscious or callous indifference," and "mere negligence . . . or neglect" will not suffice.[36]

In this case, Plaintiff contends that Defendants Basse and Baluti "refused or failed to treat" him and discover the source of his back pains and swollen collar bones. The undersigned does not believe this to be sufficient. Where a plaintiff argues that a defendant refused to treat him or ignored his complaints, he faces an exceedingly high burden. "Complaints that more treatment should have been ordered, without more, are insufficient to show deliberate indifference," as "the decision whether to provide additional treatment is a classic example of a matter for medical judgment."[37] Plaintiff's baseless assertion that "prior x-rays . . . could not show[] an injury" does not elevate Basse

---

31. *Turner v. Driver*, 848 F.3d 678, 685 (5th Cir. 2017).
32. (Doc. 2 at 12).
33. U.S. Const. amend. VIII.
34. *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004).
35. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert v. Caldwell*, 463 F.3d 339, 348 n.30 (5th Cir. 2006).
36. *Iruegas v. Poe*, 374 F. App'x 513, 517 (5th Cir. 2010) (unpublished) (alterations and internal quotation marks omitted).
37. *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009) (unpublished) (internal quotation marks omitted).

and Baluti's conduct to anywhere near the deliberate indifference standard. Plaintiff does not explain how the prior x-rays performed on him could not show the injuries he ostensibly has. Nor does the live Complaint contain allegations showing that he has an injury which could not be diagnosed by x-ray, and only detectable by MRI. Plaintiff has not alleged what the risk to his health is or was beyond simple vitriol about undetectable causes of his pain. Thus, Plaintiff's pleadings do not suggest that more treatment or diagnosis beyond an x-ray or his prescribed medication would have been necessary considering his future health and accordingly fail to illustrate deliberate indifference on this ground.

Mere dissatisfaction with one's medical treatment or diagnosis also does not constitute deliberate indifference and does not rise to the level of a constitutional violation.[38] Basse and Baluti's purported failure to order an MRI falls more in line with their medical judgment as doctors, who evidently examined the x-rays which revealed no broken bones or other damage. To the extent this failure was indeed erroneous, it was, at worst, "nothing more than negligence, medical malpractice, or a disagreement with [Defendant] medical professionals over the proper course of treatment."[39] Medical malpractice on its own does not raise a constitutional violation.[40] Likewise, relying on x-rays and refusing to order an MRI do not represent unconstitutionally "cruel and unusual punishment."[41] Because Basse and Baluti's alleged conduct did not "unnecessarily and wantonly inflict . . . pain repugnant to the conscience of mankind," the undersigned finds that Plaintiff has failed to state an Eighth Amendment claim on this ground.[42]

---

38. *See Bailey v. Alviar*, No. 9:15cv164, 2018 WL 1701993, at *5 (E.D. Tex. Feb. 15, 2018).
39. *Id.*
40. *See id.*; *see also Bedford v. Nagel*, No. H-06-1478, 2006 WL 3813769, at *6 (S.D. Tex. Dec. 26, 2006).
41. *Bedford*, 2006 WL 3813769, at *6 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).
42. *See Iruegas*, 374 F. App'x at 517 (alterations and internal quotation marks omitted) (citing *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009)).

Plaintiff also states that a "reasonable medical professional would not have postponed the treatments" or refused to schedule an MRI.[43] As a preliminary matter, Plaintiff's live Complaint is devoid of allegations that any further "treatments" beyond his prescribed medication were postponed. To the extent Plaintiff is arguing negligence as a basis for deliberate indifference, his claim fails on this ground as well. A plaintiff asserting a defendant's deliberate indifference to a serious medical need must meet an "extremely high" standard.[44] This threshold is exceedingly difficult to meet "when the inmate was provided with ongoing medical treatment."[45] Indeed, "[u]nsuccessful medical treatment[ or] acts of negligence . . . do not constitute deliberate indifference, . . . absent exceptional circumstances."[46] Thus, Plaintiff cannot rely upon a theory of negligence to substantiate his Eighth Amendment claim for deliberate indifference. More factual assertions are required to suggest anything other than negligence on the part of Basse and Baluti—the undersigned does not detect them here.

The Eighth Amendment additionally does not preserve the right of a plaintiff to "dictate the details of his medical treatment."[47] To the extent Plaintiff is claiming that the remedial concoction of drugs prescribed to him at the Tyler County hospital was erroneous, and that Defendants Basse and Baluti should have corrected it, these arguments fail. Incorrect diagnoses or their subsequent treatments by prison medical personnel does not a claim for deliberate indifference make.[48] Plaintiff is in no position to commandeer the judgment of his doctors. Even if he were, the prescription of painkillers for his pain on its own is insufficient to demonstrate a callous disregard of a substantial risk to his health. Plaintiff's assertions do not meet the deliberate indifference standard.

---

43. (Doc. 2 at 11).
44. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal citation omitted).
45. *DeShields*, 349 F. App'x at 976.
46. *Id.* (citing *Gobert*, 463 F.3d at 346).
47. *McQueen v. Revell*, No. 2:01-CV-0088, 2001 U.S. Dist. LEXIS 17155, at *12 (N.D. Tex. Oct. 22, 2001).
48. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff does not allege sufficient facts to state an Eighth Amendment claim against Defendants Basse and Baluti. Therefore, the claim must be dismissed. Accordingly, the undersigned **RECOMMENDS** that the Motions to Dismiss be **GRANTED** as to Plaintiff's Eighth Amendment claim.

### 2. Personal Involvement

Defendants additionally assert that Plaintiff fails to allege facts demonstrating personal involvement in any alleged violations by Defendants Linthicum, Mitchell, Murray, and Raimer.[49] Defendants also claim that the trio cannot be held liable under a respondeat superior theory.

In any § 1983 case, a given defendant sued in his individual capacity must be alleged to have had "personal involvement in the violative conduct."[50] Defendants in § 1983 cases must thus either be personally involved or "commit acts [that] are causally connected to the constitutional violation alleged."[51]

Respondeat superior liability is not available under § 1983, so defendants must have committed acts directly contributing to the retaliation.[52] "Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in [the] plaintiff's injuries."[53] For matters of policy, the plaintiff must allege that the defendant was personally involved in the actions complained of or is responsible for the unconstitutional policy or custom.[54] "Thus, a supervisor who is not personally involved is liable only if he has implemented 'a policy so deficient that the policy itself is

---

49. (Docs. 11 at 4–6; 12 at 9–12).
50. *See McIntyre v. Castro*, No. 1:16-CV-490 RP, 2017 WL 1483572, at *3 (W.D. Tex. Apr. 25, 2017) (citing *McIntyre v. Castro*, 670 F. App'x 250, 251 (5th Cir. 2016) (unpublished)).
51. *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quotation marks omitted) (alteration in original).
52. *Id.*
53. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).
54. *Wanzer v. Rayford*, No. SA-20-CV-00779-XR, 2022 WL 286912, at *4 (W.D. Tex. Jan. 31, 2022).

a repudiation of the constitutional rights and is the moving force of the constitutional violation.'"[55] Specific conduct by the defendants must be alleged, as conclusory allegations are insufficient.[56]

Here, Plaintiff does not allege facts indicating that any of Defendants Linthicum, Mitchell, Murray, or Raimer were personally involved in the alleged incidents. Additionally, there is a dearth of factual allegations illustrating that any of their conduct caused or was a moving force toward Plaintiff's purported injuries or harm. Plaintiff has also failed to demonstrate that any of these Defendants implemented or were otherwise responsible for a policy "so deficient" that it itself was a "repudiation" of his constitutional rights. Even if Plaintiff's conclusory allegations that Defendants "incurred a claim of negligence credentialing" could substantiate a negligence claim, as noted above, negligence on its own cannot sustain an Eighth Amendment violation.[57] Thus, the inclusion of these Defendants is purely frivolous and conclusory.

There are also no facts showing that Defendants knew or should have known of any substantial risk of harm to Plaintiff. Nowhere in Plaintiff's Amended Complaint are there allegations that Defendants Linthicum, Mitchell, Murray, or Raimer took any action or omitted any conduct whatsoever. Therefore, Plaintiff's pleadings present no cognizable claims against these Defendants. Accordingly, the undersigned **RECOMMENDS** that the Motions to Dismiss be **GRANTED** to as to Plaintiff's claims against Defendants Linthicum, Mitchell, Murray, and Raimer.

### C. Qualified Immunity

The undersigned has concluded that Plaintiff does not allege sufficient facts to support his Eighth Amendment violation claim, evaluated only if it survives sovereign immunity. Nevertheless,

---

55. *Davis v. Linthicum*, No. 2:21-CV-00150, 2021 WL 6010576, at *4 (S.D. Tex. Sept. 2, 2021) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).
56. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *see also Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (stating that officials are only accountable for "their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff").
57. (*See* Doc. 2 at 12).

the undersigned finds it comprehensive to consider the remaining argument in the Motions to Dismiss.

The doctrine of qualified immunity "shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[58] "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[59] The doctrine applies to "all but the plainly incompetent or those who knowingly violate the law."[60] "Qualified immunity represents the norm," so "courts should deny a defendant immunity only in rare circumstances."[61]

In determining whether qualified immunity applies at the motion to dismiss stage, courts generally follow a two-step process, inquiring (1) "whether the facts that a plaintiff has alleged or shown make out a constitutional violation"; and (2) "whether the violation was objectively unreasonable in light of law that was clearly established at the time of the alleged misconduct."[62] "To defeat qualified immunity, a plaintiff must demonstrate that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[63] The plaintiff ultimately has the burden to negate the assertion of qualified immunity.[64]

---

58. *Serrano v. U.S. Customs & Border Patrol*, 975 F.3d 488, 503 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
59. *Pearson*, 555 U.S. at 231.
60. *Ziglar v. Abbasi*, 582 U.S. 120, 152 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
61. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (internal quotation marks and citations omitted).
62. *Cabello v. Torres*, No. DR-11-CV-0078-AM-CW, 2014 WL 12986196, at *7 (W.D. Tex. Jan. 3, 2014); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 479 (N.D. Tex. 2018).
63. *Shumpert v. City of Tupelo*, 905 F.3d 310, 321 (5th Cir. 2018).
64. *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020).

District courts are allocated discretion to decide which prong of the two-part qualified immunity framework is to be addressed first.[65] The undersigned begins with the question of whether a constitutional right violation has been alleged.

### 1. Constitutional Right Violation

The first prong, whether a constitutional right was violated on the facts alleged, is the threshold question in a qualified immunity analysis.[66] The undersigned has already concluded above that Plaintiff has not alleged a violation of his constitutional right to be free from cruel and unusual punishment. Therefore, Plaintiff has failed to meet his burden of rebutting Defendants' entitlement to the qualified immunity defense on the first prong of the analysis.

### 2. Objectively Unreasonable in Light of Clearly Established Law

In the event that the Court concludes that Plaintiff has sufficiently pleaded an Eighth Amendment violation, the undersigned considers the second prong of the qualified immunity analysis.

Assuming Plaintiff's right as identified is indeed a constitutional right—likely characterized as the right to be free from physicians' interference in the self-dictation of one's own medical treatment—Plaintiff continues to bear the burden of demonstrating that this right was clearly established at the time of its violation. "In determining what constitutes clearly established law, this court first looks to Supreme Court precedent and then [to Fifth Circuit precedent]."[67] The law "can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at

---

65. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). Defendants rely in part on an admonition by the Supreme Court that courts should *first* consider whether a violation of a constitutional right has been alleged before moving on to the purported second step of the analysis. (Docs. 11 at 9 (citing *Siegert v. Cilley*, 500 U.S. 226, 230 (1991)); 12 at 13–14). Although the undersigned's analysis follows said order, the undersigned observes that the progenitor *Siegert* has since been abandoned as a mandatory framework. *See Pearson*, 555 U.S. at 236 ("[T]he sequence set forth in [*Siegert* and later cases] . . . should no longer be regarded as mandatory.").
66. *Blackmon v. Kukua*, 758 F. Supp. 398, 413 (S.D. Tex. 2010).
67. *White v. Calvert*, No. H-20-4029, 2021 WL 6112791, at *6 (S.D. Tex. Dec. 27, 2021) (alterations in original) (quoting *Shumpert*, 905 F.3d at 320).

issue violated constitutional rights."⁶⁸ The 'central concept" behind "clearly established" is that of "fair warning."⁶⁹ Thus, when qualified immunity is asserted in the deliberate indifference context, the second step of the analysis focuses on whether Defendants' actions were "objectively unreasonable" in light of the admonition to "not be deliberately indifferent" to any serious medical need.⁷⁰

In this instance, the undersigned concludes that Defendants' alleged conduct did not violate clearly established law. It indeed is clearly established that denying medical care to a prisoner with a serious medical need can constitute a constitutional violation where the facility personnel was "aware of a substantial and significant risk . . . but effectively disregarded it."⁷¹ Prolonged delays in providing needed medical care can also pose a constitutional violation.⁷² But as explained above, Plaintiff does not allege facts indicating that back pain and swollen collar bones presented a "substantial and significant risk" to his health. It is unclear and unstated whether generic pain and "swollen bones," without more, constitute a substantial risk. Further, Plaintiff omits facts which would show that any of Defendants were aware of any such risk. Certainly, Basse and Baluti, as Plaintiff's treating physicians, would have been aware of the pains and swollen bones he allegedly experienced. At the same time, they would, as Plaintiff claims, also have been aware of Plaintiff's prior negative x-ray results. Plaintiff was denied an MRI, but he does not discuss how the non-provision of the imaging led to an actual or prospective decrease in his health. There is no reason to believe in this case that the refusal to grant an MRI presented a substantial risk to Plaintiff's health.

Plaintiff provides no authority demonstrating that he has a right to decide the course of his treatment, and the plethora of case law signifying the contrary would cast upon "established law" a cloud of ambiguity. Plaintiff had already been prescribed various painkillers for his pain; his live Complaint lacks any allegation that he took them as prescribed but to no effect, or that his pain

---

68. *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (citation omitted).
69. *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012).
70. *See Arenas v. Calhoun*, No. SA-16-CV-01203-XR, 2017 WL 1052618, at *5 (W.D. Tex. Mar. 20, 2017).
71. *Arita v. United States*, 470 F. Supp. 3d 663, 701 (S.D. Tex. 2020).
72. *Irby v. Hinkle*, No. 21-40621, 2023 WL 2524447, at *4 (5th Cir. Mar. 15, 2023) (unpublished).

reached a level at which more painkillers or higher doses would have been necessary. To the extent that Plaintiff is arguing that an MRI is required in the event that an x-ray does not detect the cause of pain or swelling, the undersigned finds no support for this proposition. The law at the time of the alleged incidents clearly established only that, essentially, prison physicians must provide on-time and adequate medical diagnosis and treatment. There is scant authority supporting the proposition that generic back pain and "swollen bones" are serious medical needs necessitating an MRI. Thus, Defendants Basse and Baluti's decisions to refuse an MRI at the very least were not objectively unreasonable in light of clearly established law.

As noted above, Plaintiff does not allege any facts implicating the personal involvement of Defendants Linthicum, Mitchell, Murray, or Raimer. It follows that it cannot be determined that these Defendants violated a clearly established right, or that their undescribed actions were objectively unreasonable. Plaintiff has therefore failed to meet his burden on the second prong.

The undersigned has found that, even if Plaintiff has survived Federal Rule 12(b)(1) and stated a plausible claim for relief under Federal Rule 12(b)(6), Defendants would be entitled to the defense of qualified immunity. Accordingly, the undersigned **RECOMMENDS** that the Motions to Dismiss be **GRANTED**. (Doc. 11).

## D.     State Law Negligence/Negligent Hiring[73]

Under 28 U.S.C. § 1367(c), a trial court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. These original jurisdiction claims include claims made pursuant to federal law. The dismissal of all federal

---

73. The non-Raimer Defendants insist that any negligence claims were dismissed in the Eastern District of Texas. (Doc. 11 at 2 n.1). This is true, but not as a matter of merit; the non-Raimer Defendants had been severed by the time the Eastern District of Texas considered the merits of the case, and eventually dismissed the state law claims on supplemental jurisdiction grounds. *See Christopher Guillen v. Lorie Davis et al.*, No. 9:19-cv-00187-MAC-ZJH (E.D. Tex. Oct. 21, 2019) (ECF No. 66 at 2). Even though the non-Raimer Defendants here request an opportunity to respond to the negligence claims, the undersigned, recommending that this Court also decline to exercise its supplemental jurisdiction on said claims, finds no need to grant such opportunity.

claims "provides a powerful reason to choose not to exercise jurisdiction."[74] The general rule in the Fifth Circuit is that "when all federal claims are dismissed or otherwise eliminated from a case prior to trial," the trial court should decline to exercise supplemental jurisdiction.[75]

In this case, the undersigned recommends the dismissal of all of Plaintiff's federal law claims. The only conceivable remaining claims are premised upon state law negligence. Therefore, the undersigned **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### IV. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED**. (Docs. 11, 12).

Further, the undersigned **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law negligence and negligent hiring claims.

Finally, the undersigned **RECOMMENDS** that all other pending motions be **DISMISSED AS MOOT**, and that this case be **CLOSED**.

SIGNED this 30th day of May, 2023.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

---

74. *See Pierce v. Hearne Indep. Sch. Sch. Dist.*, No. W:13-CV-00334, 2014 WL 11308099, at *15 (W.D. Tex. June 19, 2014) (quotation marks omitted) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).
75. *Batiste v. Island Recs., Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).